

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Mac L. Bennett, Jr.
District Attorney
Normangee, Texas

Dear Sir:

Opinion No. 0-3648
Re: Did the penitentiary authorities
have the right at the time the
relator was returned to the peni-
tentiary to forfeit all of the
overtime and commutation earned
by the relator prior to his dis-
charge on the conditional pardon.

Your request for our opinion on the hereinabove
captioned question has been received. We quote from your
letter as follows:

"I am enclosing to you herewith an agreed
statement of facts in a habeas corpus matter
heard in Huntsville some days ago.

"The question, as I see it, is whether or
not the penitentiary authorities had the right
at the time the relator was returned to the peni-
tentiary to forfeit all of the overtime and com-
mutation earned by the relator prior to his dis-
charge on the conditional pardon."

We also quote from the agreed statement of facts men-
tioned in and attached to your letter, as follows:

"That the relator Virgil Bounds was convicted
of the offense of burglary in the Criminal District
Court of Jefferson County, Texas, and that on the
9th day of November, 1937, was sentenced to four
years confinement in the state penitentiary of Tex-
as and was received in the state penitentiary at
Huntsville, Texas, on January 9, 1938; that there-
after on May 1, 1939, the relator, Virgil Bounds,
by Proclamation No. 32558 of the Governor of the
State of Texas was granted a conditional pardon
conditioned that he accept the job offered him in

Beaumont, Texas, and make some provision for
his mother; that he totally abstain from the use
of intoxicating liquors of every kind and char-
acter and that the relator accept the said con-
ditional pardon; that thereafter on the 20th day
of June, 1940, by Proclamation No. 1603 the con-
ditional pardon hereinbefore referred to granted
to the relator was revoked by W. Lee O'Daniel,
Governor of the State of Texas, for the reasons
set out therein and on file in the office of the
Secretary of State; that on September 26, 1940,
the relator was received at the state penitentiary
at Huntsville, Texas, as a conditional pardon
violator and that at such time the overtime and
commutation time that the relator had earned prior
to May 1, 1939, was by the authorities of the Texas
Prison System forfeited;

"That on this day the relator Virgil Bounds
will be discharged on or about the first day of
August, 1941; that had such overtime and commuta-
tion time not been forfeited the relator would be
entitled to his discharge from the Texas State
Penitentiary at this time; it is further agreed
that on September 26, 1940, when the relator was
returned to the Texas State Prison 11 months and
2 days were forfeited; that at such time 1 month
and 13 days commutation time was forfeited; it is
further agreed that O. J. S. Ellingson and W. W.
Waid, the respondents herein, are restraining the
liberty of the relator Virgil Bounds, by virtue
of and under the authority of the judgment and
sentence made and entered in Jefferson County,
Texas, on or about November 9, 1937, and under and
by virtue of the revocation of the conditional par-
don as hereinbefore set out; it is further shown
and agreed herein that a writ of habeas corpus was
duly issued by the District Clerk of Walker County,
Texas, under direction of the District Judge of said
County, on the third day of May, 1941, and was served
thereafter on the 4th day of May, 1941, by C. L.
Mitchell, Sheriff of Walker County, Texas, and that
in answer to the writ of habeas corpus served the
respondents W. W. Waid and O. J. S. Ellingson here
now produce the relator in and to said Court."

Article 6166v and 6166x-1 of Vernon's Annotated Civil Statutes of Texas provide as follows:

"Article 6166v. In order to encourage prison discipline, a distinction may be made in the treatment of prisoners so as to extend to all such as are orderly, industrious and obedient, comforts and privileges according to their deserts. The reward to be bestowed on prisoners for good conduct shall consist of such relaxation of strict prison rules and extension of social privileges as may be consistent with proper discipline, commutation of time for good conduct shall be granted by the manager, and the following deduction shall be made from the term or terms of sentences when no charge of misconduct has been sustained against a prisoner, viz.: Two days per month off of the first year's sentence; three days per month off of the second year of sentence; four days per month off of the third year of sentence; five days per month off of the fourth year of sentence; six days per month off of the fifth year of sentence; seven days per month off of the sixth year of sentence; eight days per month off of the seventh year of sentence; nine days per month off of the eighth year of sentence; ten days per month off of the ninth year of sentence; fifteen days per month off of the tenth year, and all succeeding years of sentence. A prisoner under two or more cumulative sentences shall be allowed commutation as if they were all one sentence. For each sustained charge of misconduct in violation of any rule known to the prisoner in any year of the term each commutation allowed for one month of such year may be forfeited, for any sustained charge of escape or attempt to escape, mutinous conduct or other serious misconduct, all the commutation which shall have accrued in favor of the prisoner up to that day shall be forfeited unless in case of escape, the prisoner voluntarily returns without expense to the State, such forfeiture may be set aside by the manager. For extra meritorious conduct on the part of any prisoner, he shall be recommended to the favorable consideration of the Governor for increased commutation or pardon, and in case of any prisoner who shall have escaped and been captured, part or all of his good time thereby forfeited may be restored by the manager, if in his judgment his subsequent conduct entitles him thereto."

"Article 6166x-1. Prisoners confined in the State Penitentiary shall be kept at work under such rules and regulations as may be prescribed by the general manager, with the consent and approval of the Prison Board, provided that no prisoner shall be required to work more than ten hours per day except on work necessary and essential to efficient organization of convict forces, which time shall include the time spent in going to and returning from their work, but not to include the intermission for dinner, which shall not be less than one hour, and in cases of such necessary and essential overtime work, said prisoners shall receive a deduction from their sentence of double the hours so worked; and provided further that ten hours shall constitute a day to be deducted from his sentence. This "necessary and essential work" shall be subject to the recommendations or orders of the general manager. Sunday work on jobs approved by the general manager shall be considered as "necessary and essential work." A strict accounting of credit records of all overtime earned shall be kept by the man in charge of the unit on which the work is performed and completed; a report shall be rendered to the general manager each month, who shall approve all such overtime before it is placed to the credit of the inmate. The general manager shall, with the consent and approval of the Prison Board, have the power to designate certain fixed overtime hours which he considers sufficient for the efficient performance of any particular work, and no inmate shall receive any overtime at all unless same is attested by the officer in charge of said inmate, who must certify from his own knowledge that said overtime was actually earned. For each sustained charge of misconduct in violation of any rule known to the prisoner, all commutation earned by such overtime work shall be subject to complete forfeiture. In going to and returning from work prisoners shall not be required to travel faster than a walk. No greater amount of labor shall be required of any prisoner than his physical health and strength will reasonably permit, nor shall any prisoner be placed at such labor as the prison physician may pronounce him unable to perform. No prisoner, upon his admission to the prison, shall be assigned to any labor until first having

been examined by the prison physician. Any officer or employee violating any provision of this Section, shall be dismissed from the service. This Act shall be retroactive and become effective as of June 1, 1938. Acts 1939, 46th Leg., p. 534, § 1." (Underscoring ours)

It is stated in 21 Ruling Case Law, page 1192, Section 28, that:

"Good conduct statutes are framed with the intention of improving prison discipline and have that effect if their enforcement is allowed. The credits are said to be in the nature of a payment or reward by the state to the convict for his good behavior, in order to stimulate him to conform to the rules of the institution and to avoid the commission of crimes and misdemeanors during his imprisonment. Such statutes are prompted by the highest motives of humanity, and are looked on with favor both by state and federal legislatures. Since the shortening of a sentence by reason of good behavior is a benefit conferred by the state, it is entirely dependent on the statute conferring it. * * * *

The diminution of imprisonment provided for by the hereinabove quoted statutes is a privilege of which the prisoner can be deprived only in accordance with the provisions of the statute. 20 Ruling Case Law, page 553, Section 37.

In the case of Ex parte McKenna, 64 Atl. 77, the Supreme Court of Vermont, under facts similar to those here involved, held as follows:

"The sentence is for the maximum term, and the allowance for good behavior is to be deducted from the maximum term. The deduction allowed for good behavior previous to the conditional pardon is not forfeited by the breach of the conditions of the pardon, but stands to the credit of the prisoner in the final commutation of his sentence. When a prisoner who has been at large on a conditional pardon is recommitted to serve the remainder

of his term, the time he has so been at large
is not to be treated as time served on his sen-
tence. The remainder of the term to be served on
recommitment is that part of the term that remain-
ed unexpired at the time he was set at large by
the conditional pardon."

In the case of State vs. Hunter (Iowa) 100 N. W. 510,
the Governor granted the prisoner a conditional pardon and,
among other conditions imposed by the Governor, it was provided
that:

"Whatever allowance and rebate he may have
heretofore earned by reason of good conduct while
incarcerated in the penitentiary will be forfeit-
ed by operation of such revocation, and he will be
thereupon recommitted to serve the remaining
period of his original sentence, without any re-
bate or allowance for good time heretofore earned."

We quote from the Court's opinion as follows:

"The statutory provisions as to diminution
of imprisonment for good conduct do not, perhaps,
confer upon the prisoner any legal right; but,
at any rate, they confer a statutory privilege,
of which the prisoner may avail himself. No
doubt, the forfeitures provided by Code, § 5704,
may be imposed by the warden without a judicial
determination as to the facts constituting a vio-
lation of the rules, regulations, or laws for the
government of the penitentiaries. But if no such
forfeiture has been declared until the prisoner
has served for such length of time that, with the
diminution of sentence provided for, he is entitled
to his discharge, he can, without question, secure
his discharge in a legal proceeding. We reach the
conclusion, therefore, that the diminution of im-
prisonment provided for by statute is a privilege
of which the prisoner can be deprived only in ac-
cordance with the provisions of the statute, and
that, as no provision is made for forfeiture of
this privilege on account of violation of the terms

of a conditional pardon or suspension of sentence
by the executive, no such forfeiture can be im-
posed by the executive under any condition or
stipulation inserted in the conditional pardon
or order for suspension of sentence. * * * "

We are of the opinion that credit for good conduct
and overtime allowance under Articles 6166v and 6166x-1, when
once earned by a prisoner may be forfeited only upon those
grounds specified in said Articles. It is obvious, of course,
that said statutes do not authorize a forfeiture of such credit
upon a revocation of a conditional pardon. Furthermore, we are
of the opinion that such statutes are designed to improve prison
discipline. It follows, therefore, that conduct outside of the
penitentiary while the prisoner is on a conditional pardon,
neither entitles the prisoner to the benefits of such statutes
nor subjects him to the penalties thereof.

In conference opinion No. 3010, rendered by this de-
partment on December 9, 1937, to the Honorable Bruce W. Bryant,
Chairman of the Board of Pardons and Paroles, it was held that
convicts are not entitled to commutation of time to be applied
on their sentences under Article 6166v, Revised Civil Statutes
of Texas, 1925, for time served and credited on such sentences
outside of the penitentiary. We quote from said opinion at page
179-180 in Book 67, as follows:

"You will note that the terms 'prisoner,'
'prisoner discipline' and 'prison rules' are al-
luded to in said article as well as the violation
of prison rules and escaping or attempting to es-
cape all of which I think contemplates that the
prisoner must be in the penitentiary in order to
come within the purview and intendment of said
article. It is difficult to conceive how a man
on a furlough could be a prisoner within the com-
mon and ordinary acceptation of such term. It
is also difficult to conceive of a person on a
furlough being guilty of a breach of prison dis-
cipline or escaping or attempting to escape from
a penitentiary. Evidently the commutation allowed
a prisoner under such article is a reward for good
conduct and for obedience to prison rules while

actually confined in the penitentiary. There-
fore, a person could not earn this commutation
except by actually serving the respective periods
of time required by the statute in the peniten-
tiary with a clear prison record. I, therefore,
answer your question No. 7 in the negative and
say that convicts while out of the penitentiary
on a furlough are not entitled to a commutation
of their sentences for time served out of the
penitentiary."

You are respectfully advised that it is the opinion
of this department, under the facts stated, that the peniten-
tiary authorities did not have the right, at the time the re-
lator was returned to the penitentiary to forfeit any of the
overtime and commutation earned by the relator prior to his
discharge on the conditional pardon.

Because of its related importance under the facts
submitted by you, we respectfully invite your attention, how-
ever, to the additional rule that the time during which the
relator was at large under the conditional pardon is not to
be considered as time served on his original four-year sentence.

The general rule is stated in 20 Ruling Case Law,
page 570, Section 59, as follows:

"The judgment is the penalty of the law, as
declared by the court, while the direction with
respect to the time of carrying it into effect
is in the nature of an award of execution, and
where the penalty is imprisonment, the sentence
of the law is to be satisfied only by the actual
serving of imprisonment, unless remitted by death
or some legal authority. In accordance with
these principles the general rule is that where
a prisoner has accepted a conditional pardon and
has been released from imprisonment by virtue
thereof, but has violated or failed to perform
the conditions, or any of them, the pardon be-
comes void, and the criminal may thereupon be re-
arrested and compelled to undergo the punishment
imposed by his original sentence, or so much there-
of as he had not suffered at the time of his re-
lease; and the time during which the convict is at

large under a conditional pardon is not to be
considered as time served on the original sen-
tence. This is the only logical rule, for by
the nonperformance of the conditions the pardon
becomes void, and the prisoner is in the same
state in which he was at the time his pardon was
granted; or, as is sometime said, the position
of the prisoner on a violation of the conditions
of his pardon is similar to that of an escaped
convict. * * * (Underscoring ours)

Acceptance of a pardon necessarily carries with it
an acceptance of the conditions upon which the pardon is
granted. If the condition imposed is subsequent in its nature,
as under the facts submitted by you, the pardon takes effect
as soon as it is delivered and accepted; but any violation of
the condition will work a forfeiture of the pardon, and will
render the grantee liable to rearrest and to recommitment
under the original sentence. 31 Tex. Jur., page 1268. If
the pardon itself expressly provides that on breach of any of
the conditions the convict shall be liable to summary arrest
on an order by the Governor, whose judgment shall be conclusive
as to a violation, the prisoner is not entitled to a judicial
inquiry as to the breach of the condition. Ex parte Davenport,
7 S. W. (2d) 589.

In order that we might have all the facts before us,
we obtained the record of the relator from the Board of Pardons
and Paroles.

The Governor's Proclamation No. 32558 granting the
relator a conditional pardon shows one of the conditions im-
posed to be "that he totally abstain from the use of intoxi-
cating liquors of every kind and character; * * *." Said pro-
clamation further expressly provides that "If he is guilty at
any time of any misconduct or violation of the law, or for
any other reason the Governor may deem sufficient (including
any facts not known to the Governor at the time of this clem-
ency), this conditional pardon is subject to revocation at
the Governor's discretion, with or without hearing, as the
Governor may determine, and the said Virgil Bounds may be, by
order of the Governor, returned to and confined in the peni-
tentiary until the end of his sentence."

Honorable Mac L. Bennett, Jr., Page 10

The record further shows that the conditional pardon was accepted, became effective, and that the relator was released on May 4, 1939, and that said conditional pardon was revoked on June 20, 1940. The period of time that the relator was at large under said conditional pardon, was, therefore, one year, one month and sixteen days.

The record further shows a letter dated June 7, 1941, from L. B. Maddox, Chief of Police, Beaumont, Texas, to the Jefferson County Parole Board, in which Mr. Maddox states that said Virgil Bounds was fined $50.00 and costs on June 7, 1940, on a conviction for drunkenness.

The Governor's Proclamation No. 1603, dated June 20, 1940, revoking the conditional pardon, shows that it was revoked on the ground of relator's intoxication referred to in the letter from Mr. Maddox. The revocation directs that "The prison authorities are hereby directed to take him in charge and return him to the penitentiary to serve the remainder of his sentence."

Under the authorities hereinbefore mentioned, the relator's failure to comply with the conditions of his pardon (to totally abstain from the use of intoxicating liquors) rendered the pardon void, and placed the relator in the same position (with reference to his sentence) as he was at the time his pardon became effective on May 4, 1939.

As stated before, while the relator may not have forfeited the extra time for good conduct and overtime work allowed which he had earned up to his release on the conditional pardon, he is not entitled to receive as a credit on his four-year sentence, the one year, one month and sixteen days that he was at large on the conditional pardon. The same length of time remained to be served by relator on June 20, 1940, as on May 4, 1939.

Trusting that this fully answers your inquiry, we are

APPROVED JUL 16 1941

FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By *[signature]*
Edgar Pfeil
Assistant

APPROVED
OPINION
COMMITTEE
BY *[signature]*
CHAIRMAN

EP:ej